IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAPID SETTLEMENTS, LTD., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. L-06-2124 |
| UNITED STATES FIDELITY AND GUARANTY COMPANY | * | |
| | * | |
| and | | |
| | * | |
| LONNIE L. HAMM | | |
| | * | |
| Defendants. | | |
| | * | |

*************

## MEMORANDUM

This is a declaratory judgment request in a statutory interpleader action. The parties seek a determination of to whom a series of workers' compensation payments Lonnie Hamm purportedly transferred to Rapid Settlements, Ltd. under an Order issued by a Louisiana court should rightfully be paid. Specifically, United States Fidelity and Guaranty Company ("USF&G") filed a cross-claim against Rapid Settlements, Ltd. ("Rapid") and filed a third-party complaint against RSL-3B-1L ("RSL") seeking a declaratory judgment that both the Louisiana Order and the transfer agreement between Hamm and Rapid contravene the Maine Workers' Compensation Act, that USF&G is not bound by the Louisiana Order, and that neither USF&G's nor Fidelity & Guaranty Life Insurance Company's ("F&G Life") rights and obligations are affected by the Louisiana Order. USF&G has moved for summary judgment on its cross-claim

1

and third-party complaint. Rapid and RSL have jointly filed a cross-motion for summary judgment. The motions have been fully briefed, and no hearing is necessary. See Local Rule 105.6 (D. Md. 2008). For the reasons stated herein, the Court will, by separate Order, GRANT USF&G's motion for summary judgment and DENY Rapid and RSL's cross-motion for summary judgment.

**I. BACKGROUND**

In 1986, Lonnie Hamm suffered a job-related back injury. In 1990, Hamm, his employer and his employer's insurance carrier, USF&G, entered into a settlement agreement resolving Hamm's claims for this injury under the Maine Workers' Compensation Act. The agreement was approved by the Maine Workers' Compensation Commission and provided Hamm with, *inter alia*, twenty annual payments of $11,500. To fund the payments, USF&G purchased a single premium annuity from F&G Life. USF&G was named owner of the annuity and Hamm was named payee. Hamm began receiving the annual payments.

On July 20, 2004, Hamm agreed to assign to Rapid six annual payments of $11,500 (totaling $69,000) in exchange for a discounted lump sum of $42,000. In Hamm's state of residence, Louisiana, such exchanges require court approval under the Louisiana Structured Settlement Protection Act. Therefore, on September 14, 2004, Rapid filed an "Ex Parte Petition for Transfer of Structure Settlement Rights by Rapid Settlements, LTD" in the state district court located in Caddo Parish, Louisiana. In its petition to the Louisiana court, Rapid stated that "[t]his transfer does not involve the transfer of any workers' compensation payment rights, and it does not contravene any applicable statutes or an order of any court or other governmental authority." Paper No. 65, Ex. 2, p. 2–3.

In an Order dated November 3, 2004 (the "Transfer Order"), the Louisiana court granted Rapid's petition. The Transfer Order instructed, *inter alia*, F&G Life (the annuity issuer) and USF&G (the structured settlement obligor and annuity owner) to "deliver and make payable" to RSL, Rapid's assignee, six annual payments of $11,500 each for the calendar years 2005–2010. The Transfer Order also instructed F&G Life and USF&G to make RSL the designated beneficiary under the annuity. In addition to stating that it did not contravene any applicable law, the Transfer Order also declared that "no person or entity other than Rapid or Transferee shall have the authority, upon written notification to the Annuity Owner, Structured Settlement Obligor, and Annuity Issuer to change the beneficiary for the Assigned Payments." Paper No. 65, Ex. 4, p. 4.

On November 9, 2004, Rapid sent F&G Life and USF&G notice of the transfer. All parties agree, however, that Rapid sent USF&G's notice to the wrong address. USF&G alleges that it did not learn of the ex parte proceeding or the Transfer Order until July 19, 2005. In response to learning of the transfer, USF&G sent F&G Life a letter on May 12, 2006, warning that if F&G Life made payments to Rapid, it would violate its obligations to USF&G as owner of the annuity. Additionally, USF&G contended that Hamm's payment rights were workers' compensation payment rights that could not be assigned under the Maine Workers' Compensation Act. USF&G also argued that the Transfer Order violated the Louisiana Structured Settlement Protection Act which governed the purported transfer.

On August 15, 2006, F&G Life filed a complaint and motion for interpleader in this Court. On September 6, 2006, this Court ordered Hamm, Rapid, and USF&G to interplead and settle among themselves their rights and claims to the disputed annuity payments.[1] This Court

---

[1] This Court also dismissed F&G Life from the case.

also realigned the parties, designating Rapid as the plaintiff for pleading purposes. The 2006, 2007, and 2008 disputed payments have been paid into the registry of this Court.

Rapid moved to dismiss F&G Life's complaint for interpleader on October 18, 2006. On October 20, 2006, USF&G answered the interpleader complaint, cross-claimed against Hamm and Rapid, and served a third-party complaint against RSL. Rapid moved to dismiss USF&G's cross-claim on November 20, 2006. RSL moved to dismiss USF&G's third-party complaint on December 1, 2006. By Memorandum and Order dated September 13, 2007, Rapid's and RSL's motions to dismiss were denied.

On May 8, 2009, USF&G moved for summary judgment on its cross-claim against Rapid and its third-party complaint against RSL. On that same day, Rapid and RSL together filed a cross-motion for summary judgment. These motions for summary judgment are now pending before this Court.[2]

## II. STANDARD OF REVIEW

Both parties have moved for summary judgment. A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all

---

[2] An Order of Default was entered against Hamm on December 4, 2008, for his failure to appear or file any responsive pleadings.

reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

"When both parties file motions for summary judgment . . . [a] court applies the same standard of review." McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 695 (D. Md. 2006) (citing Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991)). Furthermore, "each motion [will be considered by the court] separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). In considering each motion individually, the court will view the facts and draw all reasonable inferences in the light most favorable to the party opposing that motion. Id.

## III.   ANALYSIS

Statutory interpleader under 28 U.S.C. § 1335 involves a two step process. Relevant here is the second step, the determination of the respective rights of the claimants to the funds at stake.[3] NY Life Distrib., Inc. v. Adherence Group, Inc., 72 F.3d 371, 375 (3d Cir. 1995). This stage may be resolved by summary judgment if there is no genuine issue of material fact. Rhoades v. Casey, 196 F.3d 592, 600 (5th Cir. 1999). USF&G requested a declaratory judgment to determine the disposition of payments purportedly transferred to Rapid by the Louisiana court Transfer Order. USF&G moved for summary judgment and Rapid and RSL filed a cross-motion for summary judgment.

The Declaratory Judgment Act, 28 U.S.C. § 2201, gives federal district courts the authority in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Id. District courts have discretion to grant relief "(1) when the

---

[3] Step one, determining whether the fund-holder can compel the claimants to litigate their claims in one proceeding, see Great American Ins. Co. v. Bank of Bellevue, 366 F.2d 289, 293 (8th Cir. 1966), was resolved by this Court in its Order dated August 29, 2006.

jurisdiction will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (internal citation and quotation marks omitted). Declaratory judgment is appropriate in this case to resolve the controversy between the parties, namely, to whom must the annuity payments in question be remitted.

A.  **Rapid and RSL's Corrected Motion for Summary Judgment**

Rapid and RSL contend in their Corrected Memoranda,[4] Paper Nos. 71 and 72, that they are entitled to summary judgment because Rapid is "the only interested party which has a legitimate claim to the funds paid into the registry of the court." Paper No. 71, p. 5, ¶ 14. They specifically argue that F&G Life has paid over the annuity payments into the registry and has no further interest, that Hamm sold his rights to the payments to Rapid and the Court entered a default judgment against Hamm, both terminating his interest in the funds, and that USF&G has represented to the Court that it has no interest in receiving the funds. Rapid and RSL also point out that Hamm has been paid in full for the payments Rapid purchased from him and that Rapid stands to lose this consideration if it does not receive the funds in the registry.

Rapid and RSL correctly point out that case law states that if all but one interpleader defendant defaults or withdraws, the disputed funds go to the last remaining claimant. See Nationwide Mut. Fire Ins. v. Easton, 736 F.2d 130, 133 n.4 (4th Cir. 1984); NY Life Ins. Co. v.

---

[4] Rapid and RSL argued in their original cross-motion for summary judgment that no actual controversy exists between the parties regarding USF&G's rights and obligations, that the Louisiana Transfer Order is a final judgment that cannot be disturbed, and that Rapid did not have to provide USF&G with notice of the ex parte proceeding under the Louisiana SSPA. The first two arguments, however, merely rehashed arguments the Court rejected at the motion to dismiss stage. Rapid and RSL also argued that USF&G had indeed received notice of the Louisiana proceedings and the Transfer Order, but later admitted in their corrected memoranda that they sent these notices to the wrong address. Because the corrected memoranda abandon the arguments made in the original cross-motion and present a single argument regarding interested parties, this Court will consider the corrected memoranda as amended memoranda and will only entertain the interested parties argument.

Conn. Development Auth., 700 F.2d 91, 95 (2d Cir. 1983). They are incorrect, however, to argue that Rapid is the only remaining claimant. Although USF&G stated that it does not seek actual payment of the funds, Paper No. 69, p. 3–4, it is interested in seeing that the funds are properly distributed under the original Settlement Agreement between it and Hamm. This interest is sufficient to defeat Rapid and RSL's assertion that Rapid is the only remaining claimant. This conclusion is supported by case law cited by Rapid and RSL. In Nationwide Mut., the Fourth Circuit determined that a bankruptcy trustee qualified as a claimant in an interpleader action. 736 F.2d at 133 & n.4. The bankruptcy trustee was interested in the proper distribution of the funds in question under the bankruptcy plan, not in actually receiving the funds itself. See id. at 132–33. Here, USF&G desires the same, namely, to see that the funds are properly distributed. Accordingly, Rapid is not the only remaining claimant and Rapid and RSL are not entitled to summary judgment on this issue.

### B.     USF&G's Motion for Summary Judgment

USF&G argues that the Louisiana Transfer Order and the transfer agreement between Hamm and Rapid violate both the Maine Workers' Compensation Act ("Maine Act") and the Louisiana Structured Settlement Protection Act ("SSPA").[5]

First, USF&G contends that Hamm's assignment of his payment rights to Rapid violated the Maine Act. Hamm settled his workers' compensation claim pursuant to the Maine Act. Section 106 of the Act states:

> No agreement by an employee, unless approved by the board or by the Commissioner of Labor, to waive the employee's rights to compensation under this Act is valid. *No claims for compensation under this Act are assignable* or subject to attachment or liable in any way for debt, except for the enforcement of a current support obligation or support arrears . . . or for reimbursement of general assistance . . . . ME. REV. STAT. ANN. tit. 39-A § 106 (emphasis added).

---

[5] Rapid and RSL have not responded to this argument. It can be inferred, however, from their arguments in the corrected memoranda that they believe the Louisiana Transfer Order and the transfer agreement to be valid.

A Maine Superior Court (a trial court of general jurisdiction) and the Maine Workers' Compensation Board have interpreted the phrase "no claims for compensation under this Act" in section 106 as barring transfers of workers' compensation payment rights, unless for the narrow exceptions listed in the section.[6] In <u>In re Richardson</u>, Donald Richardson sought to have his structured settlement payment rights, arising out of a workers' compensation claim, transferred to First Providen, LLC in exchange for a lump sum payment. No. 05-130, 2005 WL 3804993, at *1 (Me. Super. Nov. 3, 2005). Under the Maine Protection of Beneficiaries of Structured Settlements Act ("Maine Structured Settlements Act"), court approval is required before such a transfer can take place. ME. REV. STAT. ANN. tit. 24-A § 2243. The Maine Structured Settlements Act also provides that the transfer cannot contravene applicable law. <u>Id.</u> at § 2243(2)(A). In reviewing a proposed transfer, a Maine Superior Court determined that the Maine Workers' Compensation Act was applicable law and that section 106 of the Maine Act prohibited the proposed transfer. <u>In re Richardson</u>, No. 05-130, 2005 WL 3804993, at *1. Specifically, the court said, "when an assignment of workers' compensation payments is not intended to pay costs associated with the enumerated statutory purposes, then any attempt to assign the underlying workers' compensation claim or the settlement payments arising therefrom are prohibited under the [Maine Act]." <u>Id.</u>

One year later, the Maine Workers' Compensation Board denied a proposed transfer of structured settlement payment rights arising out of a workers' compensation claim. <u>Whittemore (Employee) v. Bancroft Contracting Corp.</u>, No. 98-007802, 2006 WL 6197454, at *2 (Me. Workers' Comp. Bd., Nov. 20, 2006). Agreeing with the decision in <u>In re Richardson</u>, the Board determined that section 106 of the Maine Act prohibits the assignment of structured settlement payment rights except in the limited enumerated circumstances described in the statute. <u>Id.</u>

---

[6] None of the enumerated exceptions are applicable to the instant case.

8

This interpretation of section 106 is consistent with a variety of state workers' compensation statutes that prohibit assignment of payments to third parties. For example, North Carolina, Tennessee, and South Dakota each have workers' compensation statues that prohibit the assignment by stating "no claim for compensation under this [Article/chapter/title] shall be assignable." See N.C. GEN. STAT. § 97-21; TENN. CODE ANN. § 50-6-223; S.D. CODIFIED LAWS § 62-4-42. As interpreted by their respective state courts, these three statutes each prohibit the assignment of workers' compensation structured settlement payment rights.[7] See First Colony Life Ins. Co. v. Berube, 130 F.3d 827, 829 (8th Cir. 1997) (determining that the South Dakota statute prohibits assignments until the compensation is actually paid); Cross v. Capital Transaction Group, Inc., 661 S.E.2d 778, 782 (N.C. App. 2008) (determining that the statutory prohibition on assignment refers to a "'claim' filed by a workers' compensation claimant, but also bars assignment of the proceeds of such a claim"); Prime v. Dunaway, 50 S.W.2d 223, 223–24 (Tenn. 1923) (determining that the statute prohibits assignment until the compensation is actually paid and noting that a "claim" continues after entry of an award).

Similarly, many other states prohibit the assignment of workers' compensation structured settlement payment rights, but through more clearly worded statutes. See e.g., ALA. CODE § 25-5-231 (making it a misdemeanor to "take or accept from an employee an assignment of his claim or award or judgment for, or agreement to pay, compensation . . . ."); ARIZ. REV. STAT. ANN. § 23-1068 ("Compensation, whether determined or not, is not, prior to the delivery of the warrant therefore, assignable."); CAL. LABOR CODE § 4900 ("No claim for compensation . . . is

---

[7] It should be noted that a Washington State intermediate court in In re Rapid Settlements Ltd.'s Application for Approval of Structured Settlement Payment Rights, 136 P.3d 765, 773–74 (Wash. App. 2006), found the North Carolina anti-assignment provision to not bar assignment of workers' compensation structured settlement payment rights.

9

assignable before payment . . . ."); FLA. STAT. ANN. § 440.22 ("No assignment, release, or commutation of compensation or benefits due or payable under this chapter . . . ."); ILL. COMP. STAT. ANN. 305/21 ("No payment, claim, award or decision under this Act shall be assignable . . . ."); KY. REV. STAT. ANN. § 342.180 ("No claim for compensation under this chapter shall be assignable . . . ."); MASS. GEN. LAWS ch. 152, § 47 ("No payment shall be assignable or subject to attachment or be liable in any way for debts . . . ."); NEV. REV. STAT. § 616C.205 ("[C]ompensation payable or paid . . . whether determined or due, or not [i]s not assignable before the issuance and delivery of the check or the deposit of any payment for compensation . . . .").

This Court is persuaded that the interpretations of the Maine Superior Court and the Maine Workers' Compensation Board are correct. In addition to the above cited cases and state statutes, the actual language of the Maine Act is instructive. Section 106 also states ". . . or subject to attachment or liable in any way for debt, except for the enforcement of a current support obligation or support arrears . . . or for reimbursement of general assistance . . . ." This language suggests that "claims for compensation" encompass not just unliquidated claims for compensation but also actual payments or awards that could then be used to satisfy a debt or support obligations. Accordingly, the Maine Act does indeed bar assignment of structured settlement payment rights and Hamm's structured settlement payment rights established by the Settlement Agreement were not transferable, rendering the transfer agreement invalid.

Second, USF&G contends that because the transfer violates the Maine Act, it necessarily violates the Louisiana SSPA, thus rendering the Transfer Order invalid. The transfer agreement between Hamm and Rapid states that it shall be governed by Louisiana state law. Paper No. 66, Ex. E, p. 5. In Louisiana, transfers of structured settlement payment rights to third parties must

follow the requirements set forth in the Louisiana SSPA. LA. REV. STAT. ANN. § 9:2715. Importantly, the SSPA states that "[t]his Section shall not be construed to authorize any transfer of workers' compensation payment rights in contravention of applicable law or to give effect to any transfer of workers' compensation or other payment rights that is invalid under applicable law." Id. at § 9:2715.I.

Rapid asserts in its Ex Parte Petition for Transfer, filed on September 14, 2004, that "[t]his transfer does not involve the transfer of any workers' compensation payment rights, and it does not contravene any applicable statute or an order of any court or other governmental authority . . . ," Paper No. 65, Ex. 2, p. 2–3. This Court disagrees. The transfer did involve workers' compensation payment rights and it was in contravention of an applicable statute and invalid under applicable law, namely, the Maine Act.

As noted, the Settlement Agreement between Hamm and USF&G established annual payments to Hamm resolving his claims under the Maine Act. Specifically, the Settlement Agreement clearly states that "[t]he employee, Lonnie Hamm, is by virtue of this Agreement finally settling any and all Workers' Compensation claims which he . . . may have against [his employer] or against USF&G resulting from injuries . . . sustained while in the employ of [employer] on or about August 14, 1986." Paper No. 65, Ex. 1.A., p. 1. Therefore, the rights to the six annual payments transferred under the Transfer Agreement between Hamm and Rapid were indeed workers' compensation payment rights.

Likewise, the Maine Act is the applicable law. Hamm filed his workers' compensation claim in Maine, and the Maine Workers' Compensation Commission, now known as the Maine Workers' Compensation Board, Paper No. 65, Ex. 2.B, approved his settlement of that claim with USF&G, both pursuant to the Maine Act. As stated above, a Maine Superior Court and the

Maine Workers' Compensation Board have determined that such annuity payments qualify as "claims for compensation" under the anti-assignment provision in section 106 of the Maine Act. Therefore, the assignment of rights to six future workers' compensation payments contravened section 106 of the Maine Act. Accordingly, the Louisiana court did not have the authority to approve the transfer of workers' compensation payment rights between Hamm and Rapid. See LA. REV. STAT. ANN. § 9:2715.I. The Transfer Order is, therefore, not binding on USF&G.[8]

This Court is issuing a declaratory judgment that because the assignment of Hamm's payment rights to Rapid was invalid under applicable Maine law, USF&G should continue to operate as if the attempted assignment never occurred. This means that USF&G, as the annuity owner, may continue to direct F&G Life to pay all sums ordered by the Settlement Agreement to Hamm.

Because the Transfer Order is unenforceable against USF&G, neither Rapid nor RSL have a claim to the funds in question. The funds that were paid into the registry of this Court are subject to USF&G's direction rather than Rapid's or RSL's. Accordingly, within two weeks, USF&G should notify this Court where the funds in the Court registry should be sent.

This Court does not overlook the fact that Hamm has been paid an extra $42,000, the amount he received in consideration for the invalid assignment to Rapid. Neither Rapid nor RSL have cross-claimed against Hamm in this Court. Accordingly, this Court will not adjudicate any rights Rapid or RSL may have against Hamm and this Court is not expressing any opinion or judgment regarding the rights and obligations between Hamm and Rapid or RSL. Because the

---

[8] USF&G also argues that it is not bound by the Louisiana Transfer Order and that the Transfer Order does not change its or R&G Life's rights and obligations under the Settlement Agreement. Because this Court finds the Transfer Order to be void, it is unnecessary to discuss these arguments. Briefly, even if the Transfer Order was valid, it would not bind USF&G because both the United States Supreme Court and the State of Louisiana have recognized that a judgment does not bind those who are not parties to the litigation, particularly when they have no notice of the pendency of the action. See Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (citing Hansberry v. Lee, 311 U.S. 32, 40 (1940)); National Acceptance Co. of America v. Wallace, 194 So.2d 194, 202 (La. App. 1967).

transfer agreement between Hamm and Rapid was formed in Louisiana, and therefore governed by Louisiana law, this issue is best left to the Louisiana courts.

Last, USF&G claims attorney's fees. The Fourth Circuit has offered little guidance on whether state or federal law governs the award of attorney's fees in an interpleader action. Both, however, are substantially similar in that they limit such awards to mere or impartial stakeholders. Maryland state interpleader law states that a plaintiff may receive attorney's fees if it "brought the [interpleader] action in good faith as an impartial stakeholder." MD. RULE 2-221(b)(6) & 3-221(b)(6). In federal interpleader actions, courts generally have

> discretion to award costs and counsel fees to the stakeholder . . . whenever it is fair and equitable to do so. . . . Typically they are available only when the party initiating the interpleader is acting as a mere stakeholder, which means that he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability.

Safemasters Co. Inc. v. D'Annunzio & Circosta, No. Civ. K-93-3883, 1994 WL 512140, at *5 (D. Md. July 18, 1994). See also Aetna Life Ins. Co. v. Outlaw, 411 F. Supp. 824, 825–26 (D. Md. 1976) (noting that only impartial stakeholders may recover attorney's fees); Reliastar Life Ins. Co. of NY v. LeMone, No. Civ. A. 7:05CV00545, 2006 WL 733968, at *2–*3 (W.D. Va. March 16, 2006) (discussing when stakeholder may recover attorney's fees). Further, the Fifth Circuit has noted that

> An award of attorney's fees to a bystander stakeholder is an altogether different matter from an award of fees to a claimant who is a part of the controversy; there is a federal interest in protecting the stakeholder, but there is no federal interest in awarding a different amount of attorney's fees to a prevailing claimant . . . .

Perkins State Bank v. Connolly, 632 F.2d 1306, 1311 (5th Cir. 1980). This Court must, therefore, determine if USF&G can be described as a "mere stakeholder" in this action.

In this case, F&G Life is a mere stakeholder. F&G Life filed this interpleader action seeking a judicial determination as to whom to pay the annuity. It does not contest its obligation

to pay. It also does not care whether Hamm or Rapid is determined to be the recipient. Thus, F&G Life is a mere stakeholder.

Although the case law provided little guidance, this Court concludes that USF&G is not a mere stakeholder. USF&G does not claim entitlement to the annuity payments. In that sense, it is disinterested. Nevertheless, USF&G is not impartial as to the identity of the recipient. It contends that Hamm and not Rapid should receive the annuity payments. Thus, USF&G's litigation interest has always been adverse to Rapid. Accordingly, USF&G cannot be considered a mere stakeholder and its request for attorney's fees is, therefore, denied.

## IV. CONCLUSION

For the foregoing reasons, USF&G's Motion for Summary Judgment is hereby GRANTED and Rapid and RSL's Cross-Motion for Summary Judgment is hereby DENIED.

It is so ORDERED this 4th day of DECEMBER, 2009.

_____
Benson Everett Legg
Chief Judge